ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUNA COMMERCIAL II, LLC<br><br>Parte Apelada<br><br>v.<br><br>MARIE ELSIE LÓPEZ ADAMES y HOMERO GONZÁLEZ LÓPEZ LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Parte Apelantes | TA2025AP00238 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: KCD 2013-1582<br><br>Sala: 504<br><br>Sobre: Cobro de Dinero-Ordinario, Ejecución de Hipoteca: Propiedad Comercial |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 10 de septiembre de 2025.

Comparece ante nos Homero González López, Marie E. López Adames y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "apelantes") para solicitar la modificación de una *Sentencia* emitida el 30 de enero de 2025[2] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Mediante dicha *Sentencia*, el foro primario declaró *HA LUGAR* una

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202300334, KLAN202400361, KLAN202400368, KLCE202400440 y KLCE202400445).
[2] Notificada el 31 de enero de 2025.

*Moción en Solicitud de Sentencia Sumaria*[3] presentada por Luna Commercial II, LLC (en adelante, "apelados"). Como resultado, se les ordenó a los apelantes a pagar a los apelados la suma principal de $267,897.43, más intereses al 7.950%, los cuales al 6 de septiembre de 2023 ascendían a la suma de $252,481.58, y los cuales continúan acumulándose hasta el pago total. Dispuso también que, una vez se convierta en final y firme la sentencia dictada, sin que haya sido pagada la deuda en su totalidad, se proceda a vender en pública subasta los inmuebles hipotecados para satisfacer, hasta donde alcance, las cantidades adeudadas.

Por los fundamentos que exponemos a continuación, se **confirma** la Sentencia apelada.

-I-

En lo concerniente a la controversia que nos ocupa, en julio de 2013, Doral Bank presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de los aquí apelantes. Doral Bank alegó ser el tenedor de un pagaré suscrito a su favor por la suma de $297,500.00 con intereses pactados al 7.950%, el cual fue garantizado mediante una hipoteca constituida sobre un bien inmueble comercial de los apelantes, sito en San Juan, Puerto Rico. Alegaron que los apelantes incumplieron con los términos de la obligación.

En mayo de 2022, los aquí apelados presentaron una *Moción para Sustituir Parte Demandante*, por haber adquirido el préstamo objeto de la Demanda mediante endoso del correspondiente pagaré.

---

[3] Véase Apéndice del Recurso Apelativo, Entrada #16, pág. 28 *et seq*. del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

Luego de varios trámites procesales, el TPI emitió una *Sentencia Parcial*[4], cuya revisión fue solicitada, por ambas partes, ante esta curia. Por medio de una *Sentencia* emitida el 31 de mayo de 2024[5], este Tribunal revocó en parte la mencionada *Sentencia Parcial* y devolvió el caso al TPI para determinar la cuantía final de la deuda. Determinó también que, de dicha cuantía a determinarse, se debía excluir cualquier concepto distinto al principal sin pagar y a al interés pactado, como, por ejemplo, "cargos por demora", "costas", "gastos" u "honorarios de abogado". Esto, debido a que, si bien es cierto que la deuda objeto de la demanda está vencida, líquida y exigible, el Acreedor-Apelado incumplió con las obligaciones contraídas en cuanto al refinanciamiento de la deuda. En lo pertinente, ambas partes, el 18 de junio de 2024, presentaron una *Moción de Reconsideración* a esta curia, las cuales fueron dictadas *NO HA LUGAR*.

El foro primario, por su parte, emitió una *Sentencia*[6] el 30 de enero de 2025[7] en la que les ordenó a los apelantes a pagar a los apelados la suma principal de $267,897.43, más intereses al 7.950%, los cuales, al 6 de septiembre de 2023, ascendían a la suma de $252,481.58, y los cuales continúan acumulándose hasta el pago total. Dispuso también que, una vez se convierta en final y firme la sentencia dictada, sin que haya sido pagada la deuda en su totalidad, se proceda a vender en pública subasta los inmuebles hipotecados para

---

[4] Véase Apéndice del Recurso Apelativo, Entrada #22, pág. 50 *et seq.* de SUMAC TA.
[5] Véase Apéndice del Recurso Apelativo, Entrada #3, pág. 2 *et seq.* de SUMAC TA.
[6] Véase Apéndice del Recurso Apelativo, Entrada #2, pág. 3 *et seq.* de SUMAC TA.
[7] Notificada el 31 de enero de 2025.

satisfacer, hasta donde alcance, las cantidades adeudadas.

En la mencionada Sentencia, el TPI hizo las siguientes determinaciones de hecho, los cuales no están en controversia:

1. Los deudores, González López y López Adames, suscribieron y emitieron un pagaré hipotecario a favor de Doral Bank o a su orden el día 21 de febrero de 2004, por la suma de $297,500.00 de principal, más intereses a razón de 7.950% anual, mediante el cual los deudores, González López y López Adames, se obligaron a emitir pagos mensuales de $2,172.59 comenzando el 1 de abril de 2004, con un pago final englobado por la cantidad de $277,107.99, con fecha de vencimiento de 1 de marzo de 2011.

2. En esa misma fecha, los deudores, González López y López Adames, constituyeron una hipoteca en garantía del pagaré descrito en el párrafo anterior, constituida mediante la escritura número 78 ante la Notario Teresita Navarro García, sobre las siguientes propiedades inmuebles: URBANA C-10; URBANA P-5; URBANA P-38; URBANA P-39; URBANA P-4 Y URBANA P-40.

3. Al vencimiento del pagaré, los deudores, González López y López Adames, tenían un derecho condicionado de refinanciamiento del balance, según consta en el documento titulado *Balloon Rider*, otorgado el 21 de febrero de 2004, el mismo día de la firma del pagaré.

4. El *Balloon Rider* es un contrato privado que obliga a Doral y a sus sucesores.

5. Los deudores, González López y López Adames, no realizaron el último pago por la suma de $277,107.09, según pactado en el pagaré, con fecha de vencimiento de 1 de marzo de 2011.

6. Los deudores, González López y López Adames, emitieron ciertos pagos luego del vencimiento del pagaré, los cuales fueron aplicados a la deuda, reduciendo el principal adeudado a la suma de $267,897.43.

7. Luego de vencido el último pago del préstamo, Doral ofreció refinanciar el mismo.

8. Los deudores, González López y López Adames, no aceptaron las ofertas de refinanciamiento realizadas por Doral.

9. Luna Commercial es el actual tenedor del pagaré debidamente endosado a su favor, por lo cual es la persona con derecho a exigir su cumplimiento.

10.   La deuda reclamada por Luna Commercial está vencida, es líquida y exigible.

11.      Los deudores, González López y López Adames, adeudan a Luna Commercial la suma principal de $267,897.43, más intereses al 7.950% y los cuales continúan acumulándose hasta el pago total y solvento de la obligación.

12.      La hipoteca constituida mediante la escritura número 78 del día 21 de febrero de 2004, ante la Notario Teresita Navarro García, se encuentra debidamente inscrita en el Registro de la Propiedad sobre las fincas, 30,900, 32,582, 32,583, 32,599, 32,600 y 32,601 de Santurce Norte, Registro de la Propiedad de San Juan, sección I, las cuales se describen a continuación:

**FINCA 30,900**

URBANA: PROPIEDAD HORIZONTAL: Apartment Number C dash ten (C-10); Commercial Apartment located on the level of the Diplomat Condominium, located at number eleven twenty-six (1126) Doctor Ashford Avenue, Condado, Santurce, Puerto Rico. It has an irregular shape with depth of forty-five feet nine inches (43"9") equivalent to thirteen point ninety four meters (13.09) and width of forty nine feet six inches (49"6"), equivalent to fifteen point cero nine meters (15.09). The area of this apartment is one thousand six hundred forty-point thirty-nine square feet (1,640.39) equivalent to one hundred fifty-two point five square meters (152.5). lts boundaries are as follows by the NORTH, in forty five feet nine inches (45'09"), equivalent to thirteen point ninety four meters (13.94) with the exterior wall, equipment room and stairs; by the SOUTH, in forty five feet nine inches (45'09"), equivalent to thirteen point ninety four meters (13.94) with the exterior wall of the building; by the EAST, in fifty four feet (54'0"), equivalent to sixteen point forty six meters (16.46) with the exterior wall of the building and the equipment room; by the WEST, in forty nine feet six inches (49*6"), equivalent to fifteen point cero nine inches (15'09") with the exterior wall of the building. The entrance door is located on its northern boundary facing the corridor. The apartment has a storage room located adjacent to the new transformer room. This apartment has assigned to it a participation in the general common elements of the condominium of point zero three zero nine hundred ninety nine percent (0.30999%). ----------------------------

---Consta inscrito al folio cincuenta y uno del tomo novecientos noventa y nueve de Santurce Norte, finca treinta mil novecientos (30,900), Registro de la Propiedad de San Juan, sección Primera. –

---Se aclara que la finca treinta mil novecientos (30,900) se valora en la suma de doscientos setenta y dos mil quinientos dólares ($272,500.00). ------------------

**FINCA 32,583**

---URBAN: HORIZONTAL PROPERTY: APARTMENT P-5: Parkin space located on the basement

floor of the Diplomat Condominium, located at number one thousand one hundred twenty six (1126) Doctor Ashford Avenue, Condado, Santurce, Puerto Rico. It has a rectangular shape with a depth of twenty point five feet, equivalent to six point twenty-five meters and a width of eleven point zero feet, equivalent to three point thirty five meters. These represent a net area of two hundred twenty-five point fifty square feet equivalent to twenty point ninety six square meters. Its boundaries are as follows: by the NORTH, in twenty point five feet equivalent to six point twenty five with apartment C dash eleven; by SOUTH, in twenty point five feet, equivalent to six point twenty five with apartment P dash 4; by the EAST, in eleven point zero feet, equivalent to three point thirty five meters with the turning area of the parking level; by the WEST, in eleven point zero feet, equivalent to three point thirty five meters with the exterior wall of the basement. -----------------------------

---Consta inscrita al folio cuarenta y dos del tomo ochocientos ochenta y siente de Santurce, finca treinta y dos mil quinientos ochenta y tres, Registro de la Propiedad de San Juan. ------------------

---Se aclara que la finca treinta y dos mil quinientos ochenta y tres se valora en la suma de cinco mil dólares ($5,000.00). ---

**FINCA 32,599**

---URBANA: PROPIEDAD HORIZONTAL: APARTMENT NUMBER P-THIRTY EIGHT (P-38), Parking Space located on the parking lot of the Diplomat Condominium, located at number eleven twenty-six (1126) Doctor Ashford Avenue, Condado, Santure, Puerto Rico. It has a rectangular shape with a depth of eighteen and zero inches feet (18'0"), equivalent to two point fifty two (2.52) meters. This represents a net area of one hundred forty-eight point fifty square feet, equivalent to thirteen point eight square meters. Its boundaries area are as follows: by the NORTH, in eighteen feet, equivalent to five point fifty nine meters with apartment P dash thirty seven; by the SOUTH, in eighteen feet, equivalent to five point forty nine meters with apartment number P dash thirty nine; by the east, IN EIGHT FEET THREE INCHES EQUIVALENT TO TWO POINT FIFTY TWO METERS WITH THE TURNING AREA OF THE parking lot; by the WEST, in eight feet three inches equivalent to two point fifty two meters with exterior fence of the parking lot. Elementos comunes generales.

---Consta inscrito al folio número doscientos dos del tomo ochocientos ochenta y siete de Santurce Norte, finca treinta y dos mil quinientos noventa y nueve, Registro de la Propiedad de San Juan, Sección Primera. -----------------------

---Se aclara que la finca treinta y dos mil quinientos noventa y nueve se valora en la suma de cinco mil dólares ($5,000.00). ---

**FINCA 32,600**

---URBANA: PROPIEDAD HORIZONTAL: APARTMENT NUMBER P DASH THIRTY NINE: Parking space located on the parking lot of the Diplomat Condominium, located at number eleven twenty-six (1126) Doctor Ashford Avenue, Condado, Santurce, Puerto Rico. It has a rectangular shape with depth of eighteen feet and zero inches (18'0"), equivalent to five point forty nine meters (5.29) and a width of eight point twenty five feet (8.25), equivalent to two point fifty two meters (2.52). This represents a net area of one hundred forty-eight point fifty square feet, equivalent to thirteen point eighty square meters. Its boundaries are as follows: by the NORTH, in feet, equivalent to five point forty nine meters with apartment P dash thirty eight; by the SOUTH, in eighteen feet, equivalent to five point forty five meters with apartment number P dash forty; by the EAST, in eight feet three inches equivalent to two point fifty meters with the turning area of the parking lot; by the WEST, in eight feet three inches equivalent to two point fifty meters with the exterior fence of the parking lot. Elementos comunes generales cero punto cero cero dos mil ochocientos porciento. ----------------------------

---Consta inscrito al folio doscientos doce del tomo ochocientos ochenta y siete de Santurce, finca treinta y dos mil seiscientos, Registro de la Propiedad de San Juan, Sección Primera. ---------------

---Se aclara que la finca treinta y dos mil seiscientos se valora en la suma de cinco mil dólares ($5,000.00). -----------------

**FINCA 32,582**

---URBAN: HORIZONTAL PROPIERTY: Apartment P dash four: Parking space located on the basement floor of the Diplomat Condominium, located at number one thousand one hundred twenty-six (1126), Doctor Ashford Avenue, Condado, Santurce, Puerto Rico. lt has a rectangular shape with a depth of twenty point five feet equivalent to six point twenty-five meters. This represents a net area of two hundred twenty-five point fifty square feet equivalent to twenty point ninety six square meters. Tts boundaries are as follows: By the NORTH, in twenty point fifty feet equivalent to six point twenty five meters with apartment P dash five; by the SOUTH, in twenty point five feet, equivalent to six point twenty five meters with the electrical substation and the storage room; by the EAST, in eleven point zero feet, equivalent to three point three meters with the turning area of the parking level; by the WEST, in eleven point zero feet, equivalent to three point three meters with the exterior wall of the basement. ------------------------------

---Consta inscrito al folio treinta y dos tomo ochocientos ochenta y dos de Santurce Norte, finca treinta y dos mil quinientos ochenta y dos, Registro de la Propiedad de San Juan, Sección Primera. ---------------

---Se aclara que la finca treinta y dos mil quinientos ochenta y dos se valora en cinco mil dólares ($5,000.00). ----------------

**FINCA 32,601**

---URBANA:          PROPIEDAD          HORIZONTAL: APARTMENTNUMBER P DASH FORTY: Parking space located on the parking lot to the Diplomat Condominium at number eleven twenty six (1126) Doctor Ashford Avenue, Condado, Santurce, Puerto Rico. It has a rectangular shape with a depth of eighteen feet, equivalent to five point forty nine meters and width of eight point twenty five feet, equivalent to two point fifty two meters. This represents a net area of one hundred forty-Eight point fifty square feet, equivalent to thirteen point eighty square meters, Its boundaries are as follows: by the NORTH, in eighteen feet, equivalent to five point forty nine meters with apartment number P dash thirty nine; the SOUTH in eighteen feet, equivalent to five point forty nine meters with apartment number P dash forty one; by the EAST, in eight feet three inches, equivalent to two point fifty two meters with the turning area of the parking lot; by the WEST, in eight feet three inches, equivalent to two point fifty two meters with the exterior fence of the parking lot. Elementos comunes generales cero punto cero cero dos mil ochocientos ocho porciento. ------------------------

---Consta inscrito al folio doscientos veintiuno del tomo ochocientos ochenta y siete de Santurce Norte, finca treinta y dos mil seiscientos uno, Registro de la Propiedad de San Juan, Sección Primera. –

-----—Se aclara que la finca treinta y dos mil seiscientos uno se valora en la suma de cinco mil dólares ($5,000.00). -----------

13.     Los deudores, González López y López Adames, son los titulares registrales de las fincas gravadas con la hipoteca anteriormente descrita, según surge de las Certificaciones Registrales que obran en nuestro expediente judicial.

14.      En cumplimiento con los dispuesto en la Ley Hipotecaria, se pactó en la Escritura de Hipoteca que la finca 30,900 se responde y se valora en $272,500.00 y que las fincas número 32,582, 32,582, 32,599, 32,600 y 32,601 responden y se valoran en $5,000.00 cada una, y por tales valores se utilizaran como tipo mínimo para la primera subasta en caso de ejecución de la hipoteca y para todos los propósitos legales y registrales.[8]

Inconformes, los apelantes acudieron ante nos nuevamente, mediante el *Recurso de Apelación*[9], e hicieron los siguientes señalamientos de error:

---

[8] Véase Apéndice del Recurso Apelativo, Entrada #2, pág. 3 *et seq.* de SUMAC TA.
[9] Véase Entrada #1 de SUMAC TA.

**PRIMERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL INTERPRETAR LA SENTENCIA DE 31 DE MAYO DE 2024 EMITIDA POR ESTE HONORABLE TRIBUNAL DE APELACIONES BAJO LOS CASOS CONSOLIDADOS KLCE202400440 y KLCE202400445 EN CUANTO A LA DETERMINACION DE LA CUANTIA ADEUDADA.

**SEGUNDO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO REALIZAR UN EJERCICIO MATEMÁTICO ULTERIOR Y MERAMENTE ADOPTAR LA CUANTIA RECLAMADA POR LUNA A PESAR DE QUE LA PRUEBA QUE OBRA EN EL EXPEDIENTE DEMUESTRA QUE LA CANTIDAD ADEUDADA ES MENOR.

**TERCERO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ORDENAR A LA PARTE APELANTE A PAGAR LA SUMA PRINCIPAL DE $267,897.43 MAS INTERESES AL 7.950% COMPUTADOS DESDE EL VENCIMIENTO DEL PAGARE HIPOTECARIO EL 1 DE MARZO DE 2011 HASTA EL SOLVENTO DE LA DEUDA.

**CUARTO:** ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO MODIFICAR LA IMPOSICIÓN DEL PAGO DE INTERESES AUN CUANDO LA PARTE APELANTE NO SE ENCUENTRA EN MORA Y ANTE LA CIRCUNSTANCIAS PARTICULARES QUE DISTINGUEN ESTE CASO.

Con la comparecencia de las partes, procedemos a resolver.

-II-

**A. Moción de Sentencia Sumaria**

La Regla 36 de Procedimiento Civil le permite a los tribunales dictar sentencia sumariamente cuando los hechos de un caso no están en controversia y el derecho favorece la posición de la parte que la solicita.[10] Con la moción de sentencia sumaria, se busca propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan

---

[10] Regla 36 de Procedimiento Civil de 2009 (32 LPRA Ap. V).

la celebración de un juicio en su fondo porque lo único que resta es dirimir una o varias controversias de derecho.[11]

En virtud de la Regla 36.1 de Procedimiento Civil, la parte reclamante en un pleito puede presentar una moción fundada en declaraciones juradas o aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[12]

Por otra parte, la Regla 36.3, titulada Moción y Procedimiento, establece los requisitos de forma, notificación y contenido, tanto de la moción de sentencia sumaria, como de la contestación a esta.[13] El inciso (b) de la Regla 36.3 regula la contestación a la moción de sentencia sumaria, la cual debe ser presentada dentro de 20 días de la notificación de la moción, y dispone que debe: (1) contener una breve exposición de las alegaciones de las partes, los asuntos en controversia y la causa de acción reclamada; (2) tener una relación concisa y organizada de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con referencia a los párrafos enumerados por la parte promovente y con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establecen estos hechos, así como de cualquier otro documento en el expediente del tribunal; (3) contener una enumeración de los hechos

---

[11] *Vera v. Dr. Bravo*, 161 DPR 308, 331 (2004).
[12] Regla 36.1 de Procedimiento Civil, *supra*.
[13] Regla 36.3 de Procedimiento Civil, *supra*.

que no están en controversia; y (4) tener las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[14]

En adición, el inciso (c) de la Regla 36.3 dispone que, al presentarse una moción de sentencia sumaria, sostenida de la forma provista por la Regla 36, la parte contraria no puede descansar únicamente en las aseveraciones o negaciones contenidas en las alegaciones, sino que tiene que contestar tan detallada y específicamente como lo hizo la parte promovente. Si no lo hace, se dictará la sentencia sumaria en su contra, si procede.[15]

A su vez, la Regla 36.3, en su inciso (e), establece que la sentencia sumaria solicitada será dictada inmediatamente, si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, así como de las declaraciones juradas y otra evidencia, surge que no existe controversia real y sustancial en cuanto a ningún hecho esencial y pertinente y, que, como cuestión de derecho, se debe dictar la sentencia sumaria a favor de la parte promovente.[16] Por último, este inciso también dispone que si la parte contraria no presenta una contestación en el término provisto por la Regla, se entenderá que la moción de sentencia sumaria quedó sometida para la consideración del Tribunal.

Ahora bien, nuestro Tribunal Supremo ha sido enfático en que solo procede que se dicte sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede

---

[14] *Íd.*
[15] Regla 36.3(c) de Procedimiento Civil, *supra*.
[16] Regla 36.3(e) de Procedimiento Civil, *supra*.

prevalecer ante el Derecho aplicable y que, el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia.[17] Por un lado, quien promueve la moción de sentencia sumaria tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún componente de la causa de acción.[18] Por el otro lado, quien se opone a la disposición sumaria solicitada, viene obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria.[19]

Al resolverse una moción de sentencia sumaria, el uso de este mecanismo, el cual es un remedio discrecional, debe ser mesurado y procederá solo cuando el tribunal esté claramente convencido de que tiene ante sí documentos no controvertidos.[20] Asimismo, se debe tomar en cuenta que la parte que se opone tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos materiales y esenciales.[21] Igualmente, toda duda sobre la existencia de una controversia real sobre estos hechos se debe resolver en contra de la parte promovente, lo cual persigue no poner en peligro ni lesionar los intereses de las partes.[22] Cónsono con esto, ha quedado claro que en nuestra jurisdicción, la moción de sentencia sumaria

---

[17] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109-110 (2015).
[18] *Íd*. a la pág. 110.
[19] *Íd.* a la pág. 111; Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010).
[20] *Vera v. Dr. Bravo, supra* en la pág. 334.
[21] *Íd.*
[22] *Íd.*

no puede convertirse en un instrumento para privar a una parte de su derecho al debido proceso de ley.[23] Este principio de liberalidad a favor de la parte oponente busca evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas.[24]

En síntesis, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de Derecho no procede.[25]

Desde la perspectiva del Tribunal de Apelaciones, esta Curia viene obligada a resolver los asuntos planteados ante su consideración de forma fundamentada.[26] En cuanto al estándar revisor del foro apelativo ante este tipo de moción, el Tribunal Supremo ha precisado que el Tribunal de Apelaciones utilizará los mismos criterio que el TPI al determinar si procede una sentencia sumaria.[27] En tal sentido, el foro apelativo se encuentra en la misma posición que el TPI al revisar una solicitud de sentencia sumaria.[28] En adición, el Tribunal Supremo de Puerto Rico recogió múltiples aspectos importantes en cuanto a la revisión del Tribunal de Apelaciones sobre la moción de sentencia

---

[23] *García Rivera et al. V. Enríquez*, 153 DPR 323, 339 (2001).
[24] *Ramos Pérez v. Univisión*, *supra* en las págs. 216-217.
[25] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 26-27 (2014).
[26] *Meléndez González et al. v. M. Cuebas*, *supra* en la pág. 114.
[27] *Meléndez González et al. v. M. Cuebas*, *supra* en la pág. 114.
[28] *Íd.* en la pág. 115.

sumaria, de los cuales resaltan los siguientes: (1) su revisión es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción, llevando a cabo todas las inferencias permisibles a su favor; (2) debe revisar si en realidad existen hechos materiales en controversia y, de haberlos, debe cumplir con exponer concretamente aquellos hechos materiales que encontró que estaban en controversia y aquellos que no; y (3) de encontrar que no están incontrovertidos, debe entonces revisar *de novo* si el TPI aplicó correctamente el Derecho a la controversia.[29]

### B. Obligaciones y Contratos

En nuestra jurisdicción gobierna el principio de la autonomía contractual y la doctrina de *pacta sunt servanda*.[30] En este marco, las obligaciones pueden nacer de los contratos, entre otras fuentes, y tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los términos contenidos en estos.[31]

Los contratos son obligatorios siempre que concurran las condiciones esenciales para su validez, a saber: el consentimiento de las partes, objeto cierto que sea materia del contrato y causa de la obligación que se establezca.[32] A esto se suma que las partes pueden establecer los pactos, cláusulas y condiciones que

---

[29] *Íd.* en las págs. 118-119.
[30] La controversia del presente caso es gobernada en materia del derecho de obligaciones y contratos según el Código Civil de 1930, puesto que este era el vigente tanto tal momento de la presentación de la demanda como al contraerse la obligación objeto del pleito.
[31] Artículos 1042 y 1044 del Código Civil de Puerto Rico de 1930 (31 LPRA secs. 2992 y 2994).
[32] Artículo 1213 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3391).

tengan por convenientes siempre que no sean contrarios a la ley, la moral y el orden público.[33]

En Puerto Rico, los contratos se perfeccionan por el mero consentimiento y, desde ese momento, las partes se obligan, tanto al cumplimiento de lo expresamente pactado, como a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, el uso y la ley.[34] El contrato existe desde que una o varias personas consienten a obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio.[35] Empero, ni validez ni su cumplimiento pueden dejarse al arbitrio de uno de los contratantes.[36]

### C. **El contrato de préstamo y el pagaré**

Dentro de la amplia gama de tipos de contratos, el referido Código Civil de 1930 define algunos, entre los cuales se encuentra el contrato de préstamo. De acuerdo con el Artículo 1631, los préstamos son contratos donde una de las partes entrega a otra alguna cosa para su uso y eventual devolución, o dinero u otra cosa fungible con tal de devolverlo en la misma especie y calidad.[37] Conforme a este contrato, el prestatario está obligado a entregar lo prestado, con sus intereses, si se pactaron, una vez el término haya vencido.[38] En este tipo

---

[33] Artículo 1207 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3372).
[34] Artículo 1210 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3375).
[35] Artículo 1206 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3371).
[36] Artículo 1208 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3373).
[37] Artículo 1631 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 4511).
[38] *Torres, Torres v. Torres et al.*, 179 DPR 481, 492 (2010).

de contrato no se deben intereses, a menos que se hayan pactado expresamente.[39]

Por otra parte, la *Ley de Transacciones Comerciales*, fue creada para modernizar la legislación de nuestra jurisdicción sobre los instrumentos negociables.[40] Entre sus disposiciones, esta Ley define los instrumentos negociables como:

> Una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
>
> (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
>
> (2) es pagadero a la presentación o en una fecha específica; y
>
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.[41]

Uno de los instrumentos negociables más utilizados en el comercio es el pagaré, el cual la referida Ley define como un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar.[42] De acuerdo con el estatuto, un instrumento es un pagaré si es una promesa.[43]

---

[39] Artículo 1646 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 4573).
[40] *Ley de Transacciones Comerciales*, Ley Núm. 208 de 17 de agosto de 1995 (19 LPRA sec. 501 *et seq.).*
[41] *Ley de Transacciones Comerciales*, *supra*, sec. 504(a).
[42] *Ley de Transacciones Comerciales*, *supra*, sec. 503(a)(9).
[43] *Ley de Transacciones Comerciales*, *supra*, sec. 503(e).

En cuanto a los términos de pago de un pagaré, hay dos temas importantes: a quién corresponde que se le pague y cuándo es requerido el pago.

En primer lugar, un pagaré puede ser pagadero al portador o a la orden.[44] Es pagadero al portador cuando el instrumento mismo lo especifica, sin hacer especial mención de la persona del acreedor, sino que quien tiene derecho al pago es el que posea la promesa.[45] Para estos efectos, el portador es "la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco".[46] En cambio, un pagaré es pagadero a la orden si el instrumento especifica que es pagadero a la orden de una persona identificada.[47]

En segundo lugar, un pagaré puede ser pagadero a la presentación o en una fecha específica. Por un lado, es pagadero a la presentación cuando el instrumento "especifica que es pagadera a la presentación o a la vista o de otra forma indica que es pagadera cuando el tenedor lo exija, o […] cuando no especifica ninguna fecha de pago".[48] En este sentido, este tipo de pagaré no contiene una fecha determinada de pago o vencimiento y, en cambio, se considera vencido en el momento en que su acreedor exige el pago de la obligación.[49] Por el otro, un pagaré debe pagarse en fecha específica si la promesa u orden "es pagadera luego de transcurrido un

---

[44] *Ley de Transacciones Comerciales*, *supra*, sec. 509.
[45] *Íd.*
[46] *Ley de Transacciones Comerciales*, *supra*, sec. 451(5).
[47] *Ley de Transacciones Comerciales*, *supra*, sec. 509(b).
[48] *Ley de Transacciones Comerciales*, *supra*, sec. 508(a).
[49] *Westernbank v. Registradora*, 174 DPR 779, 786 (2010).

período específico de tiempo desde su presentación o aceptación, o en una fecha o fechas fijas".[50]

Por último, en los casos en que se reclame el pago de un pagaré, la admisión de la existencia de este establece un caso *prima facie* a favor del demandante. Por lo tanto, en tal caso le corresponde al demandado el peso de la prueba de establecer que el pago fue realizado.[51]

### D. La demanda en cobro de dinero

De acuerdo con nuestra jurisprudencia, en la acción de cobro de dinero, el demandante sólo tiene que probar: (1) que existe una deuda válida; (2) que la misma no se ha pagado; (3) que él es el acreedor; y (4) que los demandados son sus deudores.[52] Asimismo, de acuerdo con el Artículo 1169 del Código Civil de 1930, al probarse que en efecto existe una obligación de pago, la prueba de la extinción de una obligación le corresponde al que se opone.[53]

### -III-

Examinado el expediente y evaluada la prueba en la Solicitud de Sentencia Sumaria, coincidimos con las determinaciones hechas por el Tribunal de Primera Instancia.

La revisión ante nuestra consideración se circunscribe a examinar si el foro primario erró al determinar la cuantía adeudada por los apelantes, en cuanto al principal de la deuda, más los intereses devengados.

---

[50] *Ley de Transacciones Comerciales*, *supra*, sec. 508(b).
[51] *Frías v. González*, 35 DPR 226, 227 (1926).
[52] *General Electric v. Concessionaires, Inc.,* 118 DPR 32, 43 (1986).
[53] Artículo 1168 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3261).

Luego de un detenido análisis de los documentos que obran en el expediente del presente caso, se desprende que la suma principal de $267,897.43 es la correcta. Y es que, si vamos al propio documento presentado por los apelantes, donde desglosan los pagos realizados, aún posteriormente al vencimiento del pagaré, es claro que la suma que los apelantes alegan que no se adjudicaron, no es la correcta. Esto, ya que dicha suma contiene partidas que no pueden ser adjudicados al principal, entiéndase, intereses y partidas por "escrow"[54]. Al eliminar dichas partidas, no hay controversia en cuanto a que le deben a los apelados la suma principal de $267,897.43.

En cuanto a la alegación de que erró el TPI al determinar que los intereses al 7.950% se computan desde el vencimiento del pagaré hipotecario hasta el solvento de la deuda, tampoco le asiste la razón. Norma conocida es que, en los contratos impera el principio de *pacta sunt servanda*. Esto es, que los acuerdos convenidos en un contrato son ley entre las partes. Es manifiesto que los apelantes, por su libre voluntad, firmaron el contrato de préstamos hipotecario con pleno conocimiento de lo que implicaba y de los intereses acordados.

Es menester recordar que nuestro Código Civil establece que, cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes al suscribirlo, este "se estará al sentido literal de sus cláusulas"[55]. Esto implica que, ya que en el contrato original se pactaron claramente los

---

[54] Véase Apéndice del Recurso Apelativo, Entrada #15, pág. 49 de SUMAC TA.
[55] Artículo 1233 del Código Civil de Puerto Rico de 1930 (31 LPRA sec. 3471).

intereses a ser pagados, hasta el solvento de la deuda, la intención de los contratantes es clara y libre de ambigüedades.

Tal cual como lo expresó el foro primario, el Tribunal Supremo de Puerto Rico ha reiterado que, en las obligaciones contractuales, la ley primaria es la voluntad de las partes, y los tribunales no pueden relevar a una parte de cumplir con lo pactado cuando es legítimo[56]. Forzoso es concluir que los apelantes tienen la responsabilidad de cumplir con lo que ellos mismos se obligaron de manera libre, voluntaria e inteligente.

Como ya vimos, no hay controversia de que los apelados son los legítimos tenedores de un pagaré hipotecario cuya obligación principal no ha sido satisfecha por los apelantes. No existe controversia de que dicha deuda está vencida, líquida y exigible. Tampoco hay controversia en cuanto a que, a la fecha del vencimiento del pagaré, los apelantes no emitieron el último pago global acordado.

Por esto, no se cometieron ninguno de los errores señalados por los apelantes y, coincidimos con el foro primario de que los apelantes adeudan la suma principal de $267,897.43, más intereses al 7.950%, los cuales continúan acumulándose hasta el pago total y solvento de la obligación.

**-IV-**

Por los fundamentos antes expresados se **confirma** la Sentencia apelada.

---

[56] *Cervecería Corona v. Commonwealth Ins. Co.*, 115 DPR 345, 351 (1984).

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones